1

Honorable Tiffany M. Cartwright

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

9

10

**JANE DOE (S.A.S.), an individual,**

**Case No. 3:23-cv-6038-TMC**

11

Plaintiff,

12

v.

13

**ESA P PORTFOLIO, LLC, a foreign company; ESA P PORTFOLIO OPERATING LESSEE, LLC, a foreign company; ESA MANAGEMENT, INC., a foreign corporation; and EXTENDED STAY AMERICA, INC.,** *aka Crossland Tacoma/Hosmer hotel*;

**DEFENDANTS HILTON DOMESTIC OPERATING COMPANY, INC.'s AND DOUBLETREE MANAGEMENT, LLC's MOTION FOR SUMMARY JUDGMENT**

14

15

16

**AND**

**Noted for Hearing: June 16, 2025**

17

18

**HILTON DOMESTIC OPERATING COMPANY, INC., a foreign corporation; DOUBLETREE MANAGEMENT, LLC, a foreign company; and HLT OPERATE DTWC CORPORATION, a foreign company,** *aka Doubletree Hotels Seattle Airport*,

**ORAL ARGUMENT REQUESTED**

19

20

21

Defendants.

22

23

24

25

26

27

28

HILTON DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT
Case No. 3:23-CV-06038

JONES DAY
717 Texas Street, Suite 3300
Houston, TX 77002
+1.832.239.3939

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

STATEMENT OF MATERIAL FACTS ............................................................................. 2

LEGAL STANDARD ......................................................................................................... 6

ARGUMENT ...................................................................................................................... 7

I.      Plaintiff's Claims and Testimony Are Entirely Contradicted By the Evidence. .......................................................................................................... 8

II.     Plaintiff's Perpetrator Claim Fails. ..................................................... 10

III.    Plaintiff's Participant Claim Fails. ....................................................... 14

     A.    Hilton Did Not Participate in a Venture that Trafficked Plaintiff. ............ 15

     B.    Hilton Did Not Have Actual or Constructive Knowledge of Plaintiff's Trafficking. ...................................................................................... 18

     C.    Hilton Did Not Knowingly Benefit from Participating in a Venture that Trafficked Her. ................................................................................. 20

CONCLUSION ................................................................................................................. 21

HILTON DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT
Case No. 3:23-CV-06038

- i -

JONES DAY
717 Texas Street, Suite 3300
Houston, TX 77002
+1.832.239.3939

## TABLE OF AUTHORITIES

**Cases**                                                       **Page**

*A.B. v. Extended Stay America Inc.*,
2023 WL 5951390 (W.D. Wash. Sept. 13, 2023).................................................. 12, 13

*A.B. v. Shilo Inn, Salem, LLC*,
2023 WL 8805685 (D. Or. Dec. 20, 2023) ............................................................ 14

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)................................................................................................ 6, 10

*B.J. v. G6 Hospitality, LLC*,
2023 WL 3569979 (N.D. Cal. May 19, 2023) ...................................................... 12, 18

*C.C. v. Rashid*,
2024 WL 5200543 (D. Nev. Dec. 20, 2024)........................................................... 10

*Crain v. State of California*,
2025 WL 510368 (E.D. Cal. Feb. 14, 2025) ......................................................... 9

*Doe #1 v. Red Roof Inns, Inc.*,
21 F.4th 714 (11th Cir. 2021) ............................................................... 14, 15, 18, 20

*Doe 1 v. Apple Inc.*,
96 F.4th 403 (D.C. Cir. 2024)............................................................................... 17, 20

*Doe v. G6 Hospitality, LLC*,
2025 WL 1167550 (W.D. Wash. Apr. 22, 2025)................................................... 10

*Doe v. Wyndham Hotels & Resorts*,
2025 WL 85831 (E.D. Cal. Jan. 7, 2025)............................................................... 12

*Does 1-6 v. Reddit, Inc.*,
51 F.4th 1137 (9th Cir. 2022) ............................................................................... 12

*Eytcheson v. Caternolo*,
2024 WL 3965611 (W.D. Wash. Aug. 28, 2024)................................................... 9

*G.G. v. Salesforce.com, Inc.*,
76 F.4th 544 (7th Cir. 2023) ................................................................................. 17, 20

*G.W. v. Northbrook Industries, Inc.*,
739 F. Supp. 3d 1243 (N.D. Ga. 2024) ................................................................. 12

*Gravelle v. Kiander*,
2016 WL 1258345 (W.D. Wash. Mar. 31, 2016) ................................................. 7, 8

*Hughes v. Rodriguez*,
31 F.4th 1211 (9th Cir. 2022) ............................................................................... 8

HILTON DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT      - ii -
Case No. 3:23-CV-06038

JONES DAY
717 Texas Street, Suite 3300
Houston, TX 77002
+1.832.239.3939

*In re Countrywide Financial Corp. Mortgage Marketing & Sales Practices Litigation*,
   601 F. Supp. 2d 1201 (S.D. Cal. 2009) ........................................................................ 17

*J.C. v. Choice Hotels International, Inc.*,
   2020 WL 6318707 (N.D. Cal. Oct. 28, 2020) .......................................................... 15, 16

*K.H. v. Riti, Inc.*,
   2024 WL 505063 (11th Cir. Feb. 9, 2024) ................................................................... 15

*L.M. v. 42 Hotel Raleigh, LLC*,
   2024 WL 4204906 (E.D.N.C. Sept. 16, 2024) ............................................................. 11

*M.A. v. Wyndham Hotels & Resorts, Inc.*,
   425 F. Supp. 3d 959 (S.D. Ohio 2019) ............................................................. 15, 17, 20

*Matsushita Electric Industries Co., Ltd. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ...................................................................................................... 10

*McDonald v. Lauren*,
   2019 WL 9359770 (W.D. Wash. May 2, 2019) ....................................................... 9, 10

*Nissan Fire & Marine Insurance Co., Ltd. v. Fritz Co., Inc.*,
   210 F.3d 1099 (9th Cir. 2000) ..................................................................................... 6, 7

*R.T. v. RRI West Management. LLC*,
   2025 WL 961531 (W.D. Wash. Mar. 31, 2025) ........................................................... 19

*Reyes v. Waples Mobile Home Park Ltd. Partnership*,
   91 F.4th 270 (4th Cir. 2024) ........................................................................................ 11

*Ricchio v. McLean*,
   853 F.3d 553 (1st Cir. 2017) ........................................................................................ 19

*Robel v. Roundup Corp.*,
   148 Wn.2d 35 (Wash. 2002) ........................................................................................ 13

*S.J.C. v. ESA P Portfolio LLC*,
   2024 WL 4808137 (N.D. Ga. Nov. 15, 2024) ............................................................. 14

*Scott v. Harris*,
   550 U.S. 372 (2007) ........................................................................................................ 8

*Tyla D. v. MGM Resorts International*,
   2024 WL 4839744 (D. Nev. Nov. 19, 2024) ............................................................... 17

*United States v. Tydingco*,
   909 F.3d 297 (9th Cir. 2018) ........................................................................................ 11

*Villiarimo v. Aloha Island Air, Inc.*,
   281 F.3d 1054 (9th Cir. 2002) ............................................................................... 6, 7, 10

*Wilkinson v. Torres*,
   610 F.3d 546 (9th Cir. 2010) .......................................................................................... 7

HILTON DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT
Case No. 3:23-CV-06038

- iii -

JONES DAY
717 Texas Street, Suite 3300
Houston, TX 77002
+1.832.239.3939

1

**Statutes**

2  18 U.S.C. § 1591 .......................................................................................... *passim*

3  18 U.S.C. § 1595 .......................................................................................... *passim*

4  **Other Authorities**

5  Fed. R. Civ. P. 56 ................................................................................................ 6

6  Fed. R. Evid. 201 ............................................................................................... 9

7  Restatement (Third) of Agency §§ 5.04, 7.07....................................... 13, 14

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HILTON DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT                           - iv -
Case No. 3:23-CV-06038

JONES DAY
717 Texas Street, Suite 3300
Houston, TX 77002
+1.832.239.3939

1   Hilton Domestic Operating Company Inc. and DoubleTree Management, LLC
2   (collectively, "Hilton Defendants" or "Hilton") hereby move for early summary judgment because
3   discovery has roundly refuted Plaintiff's claims, representations, and testimony.   Hilton also
4   reserves the right to seek further relief from the Court.

5                                   **INTRODUCTION**

6       Plaintiff's claims rest on the idea that Hilton somehow had a "continuous business
7   relationship" with her traffickers by continuously renting them rooms at the Doubletree Seattle
8   Airport, all while witnessing and reporting "obvious red flags of [her] trafficking," and even
9   knowingly "facilitated or assisted the[ir] trafficking operation."[1] MTD Order ("Order"), Dkt. 102,
10  at 12, 18.   Plaintiff testified that her trafficking period began around November 29, 2013, and
11  continued for "one or two months" thereafter, when a front-desk manager stopped providing free
12  rooms to her in exchange for sex.   Ex. C, 151:1-11; 165:20-166:4; 167:5-8.

13      But discovery has made clear that Plaintiff's claims cannot proceed to trial.   *First*, Plaintiff's
14  version of the facts is entirely contradicted by record evidence.   During Plaintiff's supposed
15  trafficking period, the additional hotel room records that she promised discovery would reveal *do*
16  *not exist*.   The men who supposedly trafficked her on the hotel premises were *imprisoned*.   And the
17  manager who she accuses of giving her free rooms in exchange for sex (at no benefit to Hilton) was
18  *not employed*.   As a result, no reasonable juror could possibly find Hilton liable.

19      *Second*, turning to the claims and their elements, Hilton did not perpetrate Plaintiff's
20  trafficking—that is, knowingly "harbor" her or "facilitate" her trafficking knowing or in reckless
21  disregard that she would be caused to engage in commercial sex through "force," "fraud," or
22  "coercion."   18 U.S.C. § 1591(a)(1).   A hotel does not "harbor" a guest by renting her a room, and
23  a hotel cannot knowingly assist traffickers without any contact or interaction with them.

---

[1] "S.A.S. recount[ed] various features of her trafficker's conduct with her at the hotel."   For example, she said that her trafficker would "linger" around "common areas of the hotel' like the lobby or parking lot while [she] was 'seeing johns'"; "use the 'publicly viewable computer in the hotel business center to post ads to recruit customers to exploit [her]"; "force [her] to 'pick up tricks at the hotel, in plain view of hotel staff'; and "maintain[] 'a relationship with hotel staff, including management staff."   *Id.* at 3.   She would later testify that she could not even recall whether she ever reviewed the complaint.   Pl. Mar. 18, 2025 Dep. Tr. (Ex. C), 22:21-23:6.

*Third*, Hilton did not participate in a venture that trafficked Plaintiff, either with her traffickers or with each other.  There is no evidence that Hilton had *any* relationship with Plaintiff's traffickers, much less a continuous business relationship, given that they were incarcerated during the operative period.  To the extent Hilton Defendants participated in a hotel-operating venture with each other (they did not), *that* venture did not criminally traffic Plaintiff either.  There is no evidence suggesting that Hilton knew or should have known of her or indeed anyone's trafficking at the DoubleTree.  And there is no evidence that Hilton knowingly benefited from participating in any supposed venture that trafficked Plaintiff.

Hilton unequivocally condemns trafficking in all its forms.  But no reasonable juror could find Hilton liable in this case.  Accordingly, Hilton seeks summary judgment and dismissal.

### STATEMENT OF MATERIAL FACTS ("SOMF")

**1.** Plaintiff alleges that she was trafficked from 2002 to 2016 at 19 Seattle-area hotels.  Pl. Ans. to Hilton Interrogatories (Ex. D), No. 1; Pl. Declaration Regarding Hilton Interrogatories (Ex. E).  One of those hotels was allegedly the DoubleTree Seattle Airport ("DoubleTree") hotel.[2]  SAC, ¶ 21.

**2.** Plaintiff claims that she was trafficked at the DoubleTree by two different traffickers, Dominic Rich and Robert Jackson, beginning on or around November 29, 2013.  Ex. D, No. 2; Ex. C, 227:12-17.

**3.** Plaintiff also claims that Dominic Rich trafficked her from November 16-17, 2023, at the Crossland Tacoma/Hosmer Hotel, which is not a Hilton-branded hotel.  Ex. C, 269:11-14; 270:9-16.  She produced a stay record under the name James Pickett for the Crossland Tacoma Hotel on those dates.  ESA Hotwire Receipt (Ex. F).  Plaintiff testified that James Pickett was her boyfriend during a period when she was not being trafficked by Dominic Rich, and that Pickett did not traffic her.  Ex. C, 175:16-176:1; 230:4-15.  Plaintiff has since admitted that the circumstances surrounding her November 2013 stay at the Crossland Tacoma did not involve trafficking.  Dkt. 138, 4.  ESA moved for summary judgment on April 23, 2025.  Dkt. 133.

---

[2] The DoubleTree is directly managed by DoubleTree Management LLC, a subsidiary of Hilton Domestic Operating Company Inc.

HILTON DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT
Case No. 3:23-CV-06038

-2-

JONES DAY
717 Texas Street, Suite 3300
Houston, TX 77002
+1.832.239.3939

**4.** Though Plaintiff testified that she could not remember the exact date of all her stays at the DoubleTree, she provided a record of a one-night booking under her own name, made via Hotwire.com, from November 29-30, 2013. DoubleTree Hotwire Receipt (Ex. G); Ex. C, 139:3-140:11. Hilton's records include that stay—and that stay is the *only* record that exists with her name or her traffickers' names during the 2013-2016 period in which Plaintiff says she was trafficked at the Doubletree. McFarland Declaration, Dkt. 150, 2-3; Reservation Records Search (Ex. A).

**5.** Plaintiff testified that she was trafficked by Dominic Rich during her November 29-30, 2013, stay at the DoubleTree. Ex. C, 142:6-19. More specifically, she claimed the following:

- Plaintiff testified that Dominic Rich trafficked her in person at the Doubletree from November 29-30, 2013. Ex. C, 142:11-21; Ex. D, No. 17.

- She testified that Rich used her email address to make the reservation under her name for this stay via the travel website Hotwire.com. Ex. C, 144:11-18.

- She testified that Rich paid for this stay using a prepaid debit card which he purchased from the store. Ex. C, 144:19-24; *see* Ex. D, No. 6.

- She alleged and testified that Rich was present at the hotel and used the hotel computers during this stay. Ex. C, 142:16-25; *see* FAC ¶ 66; SAC ¶¶ 93-94; Resp. 3; Ex. D, Nos. 4, 8, 21, 22, 23.

- And she alleged and testified that Rich or Jackson "constantly … guarded or escorted" her and was "always" with her as she walked in and out of the hotel lobby. SAC ¶¶ 93-94; Resp. 3; Ex. C, 154:3-9.

**6.** Plaintiff testified that she did not remember any specific commercial sex act or how many times she engaged in commercial sex during her November 29-30, 2013, stay at the DoubleTree. Ex. C, 152:12-21. She does not remember if she had any bags. Ex. C, 152:9-11. And she cannot recall what she was wearing. Ex. C, 152:6-8.

**7.** Plaintiff also testified that aside from the manager (more on him later) and the front desk staff at check-in, she did not interact with any staff at the DoubleTree during her November 29-30 stay. Ex. C, 159:12-16; *see* 152:22-153:5. Housekeeping did not see her engage in commercial

1    sex, but Plaintiff theorized they would have seen condoms in the garbage can.  Ex. C, 157:20-24.

2    **8.**  Plaintiff testified that her stay on November 29-30, 2013, was "one of the first times"

3    that she ever stayed and was trafficked at the DoubleTree.  Ex. C, 165:25-166:4.  While she could

4    not remember other exact dates, she testified that she stayed for "a month or two" thereafter, though

5    no reservation records or any other evidence of these stays exist.  Ex. C, 143:5-10; 151:1-22.  And

6    Plaintiff admitted that she has no receipts or records of any other stays.  Ex. C, 151:15-22.

7    **9.**  Plaintiff testified that she was never at the DoubleTree without being trafficked.  Ex. C,

8    143:17-25; 156:21-25.  She was unequivocal that either Rich or Jackson was always with her at the

9    DoubleTree.  Ex. C, 154:1-9.  Plaintiff also stated that she was never alone while walking through

10   the DoubleTree lobby and was always accompanied by one of her traffickers.  Ex. C, 153:18-154:5.

11   Further, she testified that Rich, each time he left the premises, stationed "baby-sitters" outside her

12   hotel room, where they would remain until he came back.  SAC ¶ 48; Ex. C, 132:4-13; 206:7-13.

13   Plaintiff noted that the "baby-sitters" would never sit outside her hotel room for longer than two

14   hours.  Ex. C, 207:10-12.

15   **10.**  Plaintiff stated that at one time during the "middle" of her trafficking period, Rich

16   assaulted her in her room.  Ex. C, 161:9-22.  *But cf. id.*, 294:3-13 (testifying that "Dominic beat me

17   every day" at the Doubletree).  Plaintiff stated that she screamed and cried during the assault and

18   that people in the hotel would have heard her screams.  Ex. C, 294:14-295:14.  Plaintiff testified

19   that others, including her "baby-sitters," would have also heard her screams.  Ex. C, 209:11-12.

20   Moreover, Plaintiff claimed that Rich injected her with methamphetamines at the DoubleTree and

21   that housekeeping would have seen "markings on the tiles and wash cloths."  Ex. C, 156:2-16.

22   **11.** Dominic Rich was continuously incarcerated and under the control of the Washington

23   Department of Corrections from at least October 5, 2010, to May 13, 2014—which includes

24   November 29-30, 2013.  Attestation of JaDean Ellwood (Ex. H).

25   **12.**  Robert Jackson was continuously incarcerated in the Washington Department of

26   Corrections from at least November 1, 2011, to August 10, 2015—which includes November 29-

27   30, 2013.  Certified WADOC Records (Ex. I).

28

**13.**  Plaintiff also testified that she engaged in commercial sex with a front-desk manager of the DoubleTree, over a "one or two month" period after November 29, 2013, in exchange for free rooms.  Ex. C, 151:1-11; 164:3-20; 165:25-166:4.  In written discovery, Plaintiff stated that she could not recall the manager's name but provided a physical description: a man "of African descent with an African accent, with short hair," and "taller; about 5' 10" with a slim but athletic built."  Pl. Ans. to ESA Interrogatories (Ex. J), No. 2; Pl. Declaration Regarding ESA Interrogatories (Ex. K).  In a follow-up deposition, Plaintiff identified this manager by photograph.  Pl. Apr. 16, 2025 Dep. Tr. (Ex. L), 314:15-23 ("97% certainty").  The individual in the photo is a former employee of the DoubleTree identified in a declaration.[3]

**14.**  Plaintiff stated that she only stayed at the DoubleTree one or two times without the manager being present and that he was at the front desk when she visited the property to engage in commercial sex with him.  Ex. C, 165:20-24; 166:25-167:3.  Further, Plaintiff testified that the last time she ever visited the DoubleTree was when she refused to have sex with the manager and he ejected her from the premises.  Ex. C, 167:4-8.

**15.**  The person Plaintiff identified as the manager at the DoubleTree was formerly employed by Hilton but fired *in May 2012*—18 months *before* Plaintiff claims to have exchanged sex for free rooms.  McFarland Declaration 3-4; Manager Employment Records (Ex. B), 1.

**16.**  Plaintiff testified that she never told anyone at the DoubleTree that she was being trafficked, nor that she was there against her will or needed to call law enforcement.  Ex. C, 160:2-7; 160:18-20.  She never told anyone at the DoubleTree that she was at the property engaging in sex for money.  Ex. C, 160:8-10.  She never told anyone at the DoubleTree that she needed help, that she was in danger, or that there were any crimes being committed.  Ex. C, 160:11-17.  And she never purchased condoms or drugs from DoubleTree employees.  Ex. C, 160:21-24.

**17.**  For its part, Hilton received no actual or suspected report of sex trafficking—either of Plaintiff or anyone else—between 2013 and 2016.  McFarland Declaration 4.

---

[3] Hilton identified the employee as the only possible match based on Plaintiff's description in her discovery responses.  McFarland Declaration 3-4; Hilton's Resp. to Pl. Second Set of Interrogatories (Ex. P), No. 19.  Plaintiff then identified the same person as the front-desk manager in question.  Ex. L, 314:15-23.

HILTON DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT
Case No. 3:23-CV-06038

-5-

JONES DAY
717 Texas Street, Suite 3300
Houston, TX 77002
+1.832.239.3939

**18.**   During that time, Plaintiff never told her family she was engaging in commercial sex at Rich's direction.  Ex. C, 84:24-85:6.  Plaintiff testified that she did not tell her therapist what had happened until the end of her trafficking period ended.  Ex. C, 62:17-63:13.

**19.**   In Plaintiff's discovery responses, she stated that she had no contact with her traffickers before 2002 or after 2016.  Ex. J, No. 28.  Moreover, during her deposition, she testified that she lived in fear of Rich while he was incarcerated.  Ex. C, 115:1-6; 119:8-13.

**20.**   Plaintiff testified that her statements regarding contact with Rich were not accurate and that she engaged in a consensual sexual relationship with Rich in November 2021.  Ex. C, 258:8-15; 266:1-6.  Plaintiff further testified that she engaged in ongoing communication with Rich through at least the early part of 2022.  Ex. C, 265:12-16.  Moreover, Plaintiff confirmed that during Rich's arrests and incarceration during the relevant period, she attempted to secure his release, wrote supportive statements to law enforcement expressing her love for him and desire to marry him, and violated court-ordered no-contact orders.  Ex. C, 117:11-17; 118:3-20; 122:17-20; 124:12; Pl. 2012 Motion & Declaration to Terminate/Modify No-Contact Order (Ex. M); Pl. 2009 Declaration Regarding Order (Ex. N).

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And a "genuine issue" does not exist "where the only evidence presented is 'uncorroborated and self-serving' testimony." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002).

The movant can "either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Then, "[i]f the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins

1  the motion." *Id*. at 1103.  "[W]hen the facts, as alleged by the non-moving party, are unsupported

2  by the record such that no reasonable jury could believe them, [the court] need not rely on those

3  facts."  *Wilkinson v. Torres*, 610 F.3d 546, 550 (9th Cir. 2010).  And "[w]here the only evidence

4  presented is … 'blatantly contradicted by the record, so that no reasonable jury could believe it,'

5  the non-moving party has not met its burden of refuting the [] motion."  *Gravelle v. Kiander*, 2016

6  WL 1258345, at *13 (W.D. Wash. Mar. 31, 2016) (quoting *Villiarimo*, 281 F.3d at 1061).

7  ### ARGUMENT

8       The TVPRA provides a trafficking victim a civil cause of action against the "perpetrator"

9  or "whoever knowingly benefits … from participation in a venture which that person knew or

10  should have known has engaged in an act [of trafficking] in violation of this chapter."  18 U.S.C.

11  § 1595(a).  Plaintiff asserts both perpetrator and participant claims, but *no* evidence supports them.

12       Throughout this litigation, the premise of Plaintiffs' claims has been that Hilton repeatedly

13  rented rooms to her traffickers while it knew or should have known that she was being trafficked.

14  *See, e.g.*, SAC ¶¶ 101(c), 125(e); Order 12-13; Response 10.  And during discovery, Plaintiff has

15  maintained that her *traffickers* continuously rented rooms at the DoubleTree and that she did not

16  go to the hotel without them.  Yet the evidence has shown that Plaintiff herself stayed at the hotel

17  for *only one night* on November 29-30, 2013.  She says that her trafficker on that date was Dominic

18  Rich—yet he was in prison during that time and could not have booked the room, much less

19  trafficked her at the hotel.  She also says that her primary customer at the hotel, a manager, provided

20  her with free rooms in exchange for commercial sex—yet he was not even employed when Plaintiff

21  says she was trafficked there.  And even to the extent that the Court could make any sense at all of

22  Plaintiff's testimony in light of other evidence, Hilton could not possibly have participated in a

23  room-rental venture with imprisoned traffickers or financially benefitted from a rogue manager

24  embezzling free rooms.  This is all fatal to both Plaintiff's perpetrator and participant claims.  Hilton

25  is thus entitled to judgment as a matter of law.

26

27

28

1    **I.    Plaintiff's Claims and Testimony Are Entirely Contradicted By the Evidence.**

2          Plaintiff has claimed and testified that she was trafficked at the DoubleTree Seattle Airport

3    beginning around November 29, 2013, and for "one or two months" thereafter.  But no other room

4    records after November 29, 2013, exist.  Her traffickers were in prison during this timeframe.  And

5    the only "customer" she identified—a manager who supposedly exchanged free rooms for

6    commercial sex and kicked her out of the hotel the last time she visited there—was fired in 2012.

7    It is thus literally impossible to credit Plaintiff's version of the facts, as it is entirely contradicted

8    by the evidence.  Without her testimony, no reasonable juror could possibly find in Plaintiff's favor

9    on any claim or even any element of any claim.



16          Though the Court must ordinarily view the facts "in the light most favorable to the

17   nonmoving party," it "should not adopt [non-movant's] version of the facts for purposes of ruling

18   on a motion for summary judgment" when it is "blatantly contradicted by the record, so that no

19   reasonable jury could believe it."  *Scott v. Harris*, 550 U.S. 372, 380 (2007); *accord Hughes v.*

20   *Rodriguez*, 31 F.4th 1211, 1218 (9th Cir. 2022) (noting that *Scott* applies to "other types of evidence

21   capable of objectively disproving witness testimony").    And refusing to credit "blatantly

22   contradicted" testimony does *not* constitute an impermissible "credibility determination[]."

23   *Gravelle*, 2016 WL 1258345, at *4.

24          For instance, in *Gravelle*, the court discounted the plaintiff's "self-serving and

25   uncorroborated declaration of injury to his right foot and ankle" given "the undisputed medical

26   evidence [that] establishe[d] that [his] foot and ankle were not injured on the day of his arrest."

27   2016 WL 1258345, at *13.  Likewise, in *McDonald v. Lauren*, the court refused to credit "plaintiff's

28

assertion that he was denied a [prison facility] transfer" by the defendants because it was "blatantly contradicted by the record" which showed that "various other non-party [Department of Corrections] personnel made the determination not to transfer [him]." 2019 WL 9359770, at *16 (W.D. Wash. May 2, 2019), *R&R adopted*, 2020 WL 3896834 (W.D. Wash. July 10, 2020). Because the court did not need to "accept [the] [p]laintiff's assertion as true," it identified "no dispute of material fact" as to the transfer decision. *Id.*

1.    Here, as previewed above, Plaintiff has consistently maintained that she was trafficked at the DoubleTree during a one-night stay from November 29-30, 2013.  FAC ¶ 64; SAC ¶ 92; Response 2.  But Plaintiff's testimony that she was trafficked that night is false.  For example, her testimony that Rich booked and paid for a reservation for November 29-30, 2013, and was present at the hotel with her is impossible because he was incarcerated at that time.  Ex. H.  Furthermore, to the extent that Plaintiff tries to claim it could have been Jackson, rather than Rich, who was with her on those dates, this too is impossible, because Jackson was also incarcerated at that time.  Ex. I.[4]  All to say, Plaintiff's "version of the facts" on the only night with a record at the DoubleTree is "blatantly contradicted by the record."  *McDonald*, 2019 WL 9359770, at *16.

2.    Plaintiff has also maintained that she was trafficked at the DoubleTree on other occasions.  Specifically, she testified that she stayed at the DoubleTree for "one or two months" *after* her November 2013 stay.  Ex. C, 151:1-11; 165:25-166:4; *see also* Pl. Rule 30(b)(6) Notice and Topics (Ex. O) (listing "trafficking period" in "2013").  But there are *no* other room rental records under Plaintiff's name or her traffickers' names from 2013 through 2016.  McFarland Declaration 2-3; Ex. A.  She also claims that she was trafficked for the final time at the DoubleTree when the manager-turned-customer kicked her out for refusing to have sex with him.  Ex. C, 167:5-8.  But the manager that she identified was fired in 2012.  McFarland Declaration 3-4; Ex. B.  Here again, Plaintiff's testimony that she exchanged sex for free rooms with a DoubleTree manager (at

---

[4] Hilton requests that the Court take judicial notice of the dates of incarceration for Rich and Jackson, as these facts "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2); *see Crain v. California*, 2025 WL 510368, at *3, *5 (E.D. Cal. Feb. 14, 2025); *Eytcheson v. Caternolo*, 2024 WL 3965611, at *1 (W.D. Wash. Aug. 28, 2024) (both taking notice of a party's incarceration records).

1    no benefit to Hilton) on, around, or after November 29, 2013, is "blatantly contradicted by the

2    record." *McDonald*, 2019 WL 9359770, at *16.

3        In sum, "no reasonable jury could believe" Plaintiff's "version of the facts," and this Court

4    should not credit it. *Id.* To the extent Plaintiff argues that Rich trafficked her at the DoubleTree

5    after he was released from prison (and thus after her November 2013 stay), this conflicts with her

6    testimony that she last stayed at the hotel when the manager—who was fired in *2012*—kicked her

7    out. And, in any event, the record contains no evidence of any such stays or visits. A "genuine

8    issue" of material fact does not exist where, as here, "the only evidence presented is 'uncorroborated

9    and self-serving' testimony." *Villiarimo*, 281 F.3d at 1061. After all, Plaintiff "must do more than

10   simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec.*

11   *Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see Anderson*, 477 U.S. at 252

12   ("a scintilla of evidence" is "insufficient"). Therefore, the claim that Plaintiff was trafficked at the

13   DoubleTree multiple times after 2013, supported only by her own say-so and contradicted by record

14   evidence, does not create a "genuine issue for trial." *See Matsushita*, 475 U.S. at 587.[5]

15   **II.    Plaintiff's Perpetrator Claim Fails.**

16       With this backdrop in mind, each of Plaintiff's claims fails. Plaintiff first claims that Hilton

17   itself somehow perpetrated her trafficking at the DoubleTree beginning in November 2013. On

18   this record, maintaining this claim borders on bad faith. A defendant is liable as a "perpetrator" of

19   sex trafficking if it: (1) "knowingly" "harbors" a person or (2) "knowingly" "benefits, financially,"

20   "from" "knowingly assisting, supporting, or facilitating a violation of [(a)(1)]"—all while knowing

21

22   ---
     [5] Even if any of Plaintiff's version of facts could be true before 2013, her claims would still fail.
     For example, even if Plaintiff had engaged in commercial sex with the front-desk manager, he was

23   no longer employed in 2012. And if Plaintiff's traffickers ever even visited the hotel, these visits
     must have occurred before they went to prison in 2010 and 2011, as no records corroborate any

24   visits after they were released. Accordingly, even if this Court were to assume that Plaintiff was
     trafficked at the DoubleTree at *some* point, it would be entirely time-barred under the TVPRA's

25   ten-year statute of limitations. 18 U.S.C. § 1595(c)(1); *see, e.g., C.C. v. Rashid*, 2024 WL 5200543,
     at *6-8 (D. Nev. Dec. 20, 2024) (dismissing portions of TVPRA claim resting on alleged trafficking

26   more than ten years old); *Doe v. G6 Hosp., LLC*, 2025 WL 1167550, at *5 (W.D. Wash. Apr. 22,
     2025) (same). (Notably, moreover, Plaintiff retained counsel in 2018—but she did not file suit until

27   2023.) This version of events would also be contradicted by Plaintiff's testimony that her November
     2013 stay at the DoubleTree was the first time that she stayed at the hotel, and that she did not

28   return to the DoubleTree after the front-desk manager ejected her from the premises. SOMF ¶ 8.

HILTON DEFENDANTS'                    -10-                    JONES DAY
MOTION FOR SUMMARY                                           717 Texas Street, Suite 3300
JUDGMENT                                                     Houston, TX 77002
Case No. 3:23-CV-06038                                       +1.832.239.3939

1    or recklessly disregarding that "force ..., fraud, [or] coercion ... will be used to cause the person to

2    engage in [] commercial sex," 18 U.S.C. §§ 1591(a)(1)-(2), (e)(4).   Plaintiff cannot point to

3    evidence that establishes any of these elements.

4        *First*, no jury could find that Hilton "harbor[ed]" Plaintiff (or performed any other listed

5    act) in violation of § 1591(a)(1) at the DoubleTree.   *See* SAC ¶ 127(c) (alleging that Hilton

6    "harbor[ed] trafficking victims").   To "harbor" under a criminal statute requires a showing "that the

7    defendant intended to violate the law" through unlawful concealment or the like.   *United States v.*

8    *Tydingco*, 909 F.3d 297, 302-04 (9th Cir. 2018); *see L.M. v. 42 Hotel Raleigh, LLC*, 2024 WL

9    4204906, at *5 (E.D.N.C. Sept. 16, 2024) (dismissing § 1591(a) claim and noting that "in the

10   criminal context, [harbor] does not mean simply 'to house'") (quoting *Reyes v. Waples Mobile*

11   *Home Park Ltd. P'ship*, 91 F.4th 270, 278 (4th Cir. 2024)).   For example, a person who "house[s]"

12   an undocumented immigrant does not "harbor" her unless the person also "intended to violate the

13   law." *Tydingco*, 909 F.3d at 302; *see Reyes*, 91 F.4th at 278.

14       Thus, a hotel does not "harbor" guests simply by renting them rooms any more than a

15   landlord "harbors" "undocumented immigrants" "simply [by] leasing" to them.   *See Reyes*, 91 F.4th

16   at 279.   But that is all that the evidence shows here.   Plaintiff herself rented a room at the

17   DoubleTree, and for just one night.   Statement of Material Facts ("SOMF") ¶ 11.   Nothing in the

18   record shows that Hilton concealed her or otherwise intended to violate the law.   For instance, there

19   is no evidence that Hilton placed Plaintiff in a room for the purpose of being trafficked or tried to

20   prevent law enforcement from finding her.   Because it simply rented her a room, Hilton did not

21   knowingly "harbor" Plaintiff.   And even crediting the (refuted) front-desk manager allegations, that

22   course of conduct could not be imputed to Hilton either.   *See* Order 14 n.7 (acknowledging that

23   "the manager's conduct" would not "itself [be] imputed" for actus reus purposes).

24       *Second*, no jury could find that Hilton Defendants knowingly participated in a venture—

25   *i.e.*, "knowingly assist[ed], support[ed], or facilitat[ed]" another co-venturer's "violation of

26   subsection (a)(1)"—in violation of § 1591(a)(2).   18 U.S.C. § 1591(e)(4) (defining "participation

27   in a venture" for purposes of § 1591(a)(2)).   To violate this provision, "[m]ere association with sex

28

traffickers is insufficient absent some knowing 'participation' in the form of assistance, support, or facilitation." *Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137, 1145 (9th Cir. 2022). But Plaintiff cannot even establish any "association" between Hilton and her traffickers, let alone assistance or support. On the one occasion that the evidence shows that she stayed at the DoubleTree, her trafficker was in prison and thus could not have booked or paid for the room or interacted with hotel staff in any way. SOMF ¶¶ 11, 12; *cf.* Order 13, 18 (crediting allegations that hotel staff "maintained a relationship with the trafficker" and "provided a service to her trafficker that was tailored to his needs"). And Plaintiff can point to no other evidence that Hilton "facilitated" her trafficking. She claims that housekeeping provided her with extra towels upon request, Ex. C, 293:3-10, but this is simply an action "that would be expected to further the interest of a hotel enterprise," not a trafficking operation, *G.W. v. Northbrook Indus., Inc.*, 739 F. Supp. 3d 1243, 1250 (N.D. Ga. 2024).

*Finally*, no jury could find that Hilton *knew* or *recklessly disregarded* that "force, fraud, [or] coercion ... [would] be used to cause [Plaintiff] to engage in [] commercial sex." 18 U.S.C. § 1591(a). In fact, the evidence shows that Plaintiff barely interacted with hotel employees—to the extent they even noticed her, at most they might have speculated (but certainly not *known* or *recklessly disregarded*) that Plaintiff was there for commercial sex.

As many Ninth Circuit courts have recognized, a plaintiff cannot establish even *constructive* knowledge where the evidence would have equally suggested to hotel staff that prostitution, rather than sex trafficking, was occurring. *See, e.g.*, *A.B. v. Extended Stay Am. Inc.*, 2023 WL 5951390, at *6-7 (W.D. Wash. Sept. 13, 2023); *B.J. v. G6 Hosp., LLC*, 2023 WL 3569979, at *6 (N.D. Cal. May 19, 2023). And when assessing actual, as opposed to constructive, knowledge, "district courts tend to look beyond allegations of 'red flag' signs that should have put a defendant on notice of sex trafficking, and in particular focus on allegations regarding hotel staff actions or duration and age that are suggestive of actual knowledge of sex trafficking." *Doe v. Wyndham Hotels & Resorts*, 2025 WL 85831, at *13 (E.D. Cal. Jan. 7, 2025).

Here, there is no evidence that hotel staff witnessed any force or coercion, let alone force or coercion connected with commercial sex. Plaintiff testified that Dominic Rich assaulted her in

HILTON DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT
Case No. 3:23-CV-06038

-12-

JONES DAY
717 Texas Street, Suite 3300
Houston, TX 77002
+1.832.239.3939

1  her hotel room, but this could not have happened on November 29 or 30, 2013, or even thereafter,

2  when he was incarcerated.  SOMF ¶ 10.  And she does not claim that she was visibly bruised or

3  injured at the DoubleTree.  Though she testified that she was always accompanied by her trafficker

4  when walking through the hotel lobby, SOMF ¶ 5, that could not have been the case during her

5  one-night stay in November 2013, when Rich was in prison, SOMF ¶ 11.  Instead, Plaintiff must

6  have checked in to the hotel without her trafficker and "walk[ed] by herself through the lobby."

7  *A.B.*, 2023 WL 5951390, at *6 (deeming allegations insufficient to show the defendant's

8  *constructive* knowledge of trafficking).  She explained that "baby-sitters" were stationed outside

9  her hotel room whenever Rich left until he returned, which never lasted more than two hours.

10  SOMF ¶ 9.  Again, this could not have occurred when he was in prison.  *Cf.* Order 14-15, 16 n.8,

11  18 (crediting allegation that Plaintiff was "constantly ... guarded or escorted by her trafficker or one

12  of his associates" as plausibly establishing knowledge of coercion).

13       Plaintiff testified that a manager at the DoubleTree—identified by photograph—knew that

14  she was engaged in commercial sex because she had sex with him in exchange for rooms numerous

15  times beginning on or after November 29, 2013.  SOMF ¶ 13.  The identified manager, however,

16  was not even employed during the relevant period, making Plaintiff's version of facts impossible

17  (or else time-barred).  SOMF ¶ 15.  *Cf.* Order 14 n.7, 15, 18 (crediting allegation that hotel manager

18  exchanged free rooms for sex as plausibly establishing Hilton's knowledge).

19       Even if Plaintiff did exchange sex for free rooms with a front-desk manager, the manager's

20  knowledge could not be imputed to Hilton.  "[N]otice of a fact that an agent knows or has reason

21  to know is not imputed to the principal if the agent acts adversely to the principal in a transaction

22  or matter, intending to act solely for the agent's own purposes."  Restatement (Third) of Agency

23  § 5.04.  Here, the front-desk manager allegedly *embezzled* from Hilton by giving away *free* rooms

24  for sex.  An employee's "embezzlement" is not deemed to be within the scope of his employment,

25  as that type of behavior can only be "activated by [his] personal motives."  *Id.* § 7.07 cmt. c.  The

26  same goes for "the sexual acts of employees," which are "directed toward ... personal sexual

27  gratification," *Robel v. Roundup Corp.*, 148 Wn.2d 35, 54, 54 n.9 (Wash. 2002), not "any purpose

28

of the employer," Restatement § 7.07 cmt. b; *see also* Order at 14 n.7.  Hilton therefore could not have known or recklessly disregarded Plaintiff's trafficking based on an allegedly *rogue manager's* knowledge.

When considering the remaining testimony that is not contradicted by record evidence, hotel staff may not have even realized that Plaintiff was engaged in *voluntary* sex work.  After all, in stark contrast to her own complaint, Plaintiff testified that she does not remember what she was wearing, whether she had any bags with her, or how many times she engaged in commercial sex during her November 29-30 stay.  SOMF ¶ 6.  And she never told anyone at the DoubleTree that she was there to engage in commercial sex or that any crimes were being committed, let alone that she was being trafficked or was in danger.  SOMF ¶ 16.   She claims only that housekeeping staff would have seen condoms in the garbage can.  SOMF ¶ 7.  *At most*, this evidence establishes the hotel staff's knowledge of "commercial sex activity."  *A.B. v. Shilo Inn, Salem, LLC*, 2023 WL 8805685, at *4 (D. Or. Dec. 20, 2023) (deeming condoms, excessive requests for towels, and consistent foot traffic to the plaintiff's room as consistent with commercial sex, but not trafficking).

With no evidence that "hotel staff observed her trafficker forcefully bringing her to the hotel or abusing her in any way," that she "ever had visible injuries," or that "she ever acted nervous or afraid around hotel employees," Plaintiff cannot even establish "constructive knowledge, much less reckless disregard or actual knowledge."  *S.J.C. v. ESA P Portfolio LLC*, 2024 WL 4808137, at *5 (N.D. Ga. Nov. 15, 2024).  Plaintiff's perpetrator claim thus fails as a matter of law.

### III.    Plaintiff's Participant Claim Fails.

Next, Plaintiff claims that Hilton Defendants are liable as "participants" in a venture that trafficked her.  To prevail on this claim, Plaintiff must prove (1) that Hilton "participat[ed] in a venture"; (2) "that venture violated the TVPRA as to [Plaintiff]"; (3) that Hilton "knew or should have known that the venture violated the TVPRA as to [Plaintiff]"; and (4) that Hilton "knowingly benefited" from its participation in that venture.  *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 723 (11th Cir. 2021) (citing 18 U.S.C. § 1595(a)).  No evidence supports these elements.

1

### A.    Hilton Did Not Participate in a Venture that Trafficked Plaintiff.

2        Plaintiff principally claims that Hilton Defendants "participated in a venture ... with [her]

3  trafficker" by "rent[ing] rooms and services to [her] trafficker." SAC ¶ 135 ("Venture 1"). Plaintiff

4  also previously proposed a second venture theory: "Hilton Defendants participated in a commercial

5  venture with one another operating the [DoubleTree]." Response 15 ("Venture 2"). Both "Venture

6  1" and "Venture 2" fail as a matter of fact and law.

7        *Venture 1.*  In its prior order, this Court explained that "participation in a venture" requires

8  "at least a showing of a continuous business relationship between the traffickers and the hotels such

9  that it would appear that the trafficker and the hotels have established a pattern of conduct or could

10  be said to have a tacit agreement." Order 11 (quoting *M.A. v. Wyndham Hotels & Resorts, Inc.*,

11  425 F. Supp. 3d 959, 970 (S.D. Ohio 2019)). And a "continuous business relationship" exists where

12  the hotel "provid[ed] lodging to people it knew or should have known were engaged in [*the

13  plaintiff's*] sex trafficking." *Id.* at 11-12 (quoting *J.C. v. Choice Hotels Int'l, Inc.*, 2020 WL

14  6318707, at *7 (N.D. Cal. Oct. 28, 2020)).[6]

15        This Court held that Plaintiff plausibly pleaded that Hilton had a "continuous business

16  relationship" with her trafficker, pointing to several allegations in the SAC. Order 11-14. But the

17  evidence has borne out *none* of these claims.

18        As an initial matter, Plaintiff was not "repeatedly trafficked" at the DoubleTree. Order 13

19  (quoting SAC ¶ 92). The evidence shows that Plaintiff stayed at the hotel for only *one night* in

20  November 2013. SOMF ¶ 4. In *J.C.*, by contrast, the plaintiff was allegedly trafficked at the

21  defendants' hotels over eleven years, "return[ing] to each of the hotels numerous times." 2020 WL

22  6318707, at *2. More importantly, Hilton could not have "rent[ed] rooms to [Plaintiff's] sex

23

24  _____

[6] In Hilton's view, "participation in a venture" instead requires "t[aking] part in a common
undertaking or enterprise involving risk and potential profit." *Red Roof Inns*, 21 F.4th at 725.
25  Under that standard, a hotel entity does not "participate in a venture with a sex trafficker" merely
by "financially benefit[ing] from renting hotel rooms to the" trafficker and "observing" "signs of
26  sex trafficking." *Id.* at 726-27; *accord K.H. v. Riti, Inc.*, 2024 WL 505063, at *2 n.5 (11th Cir. Feb.
9, 2024) (citing *Red Roof Inns*, 21 F.4th at 725) (expressly rejecting "continuous business
27  relationship" standard). *See* MTD, Dkt. 64, 10-13. Regardless, the evidence fails to satisfy even
the *M.A.* standard. But Hilton preserves its argument regarding the interpretation of "participation
28  in a venture" for appeal.

HILTON DEFENDANTS'                      -15-                    JONES DAY
MOTION FOR SUMMARY                                    717 Texas Street, Suite 3300
JUDGMENT                                               Houston, TX 77002
Case No. 3:23-CV-06038                                  +1.832.239.3939

1    trafficker[],'" Order 13, as he was incarcerated during her sole hotel stay, SOMF ¶ 11. Contrary to

2    Plaintiff's testimony, SOMF ¶ 5, her trafficker could not have booked or paid for the rooms. SOMF

3    ¶¶ 11, 12. Hilton did not engage in *any* "transactions" with Plaintiff's trafficker, Order 13, and thus

4    the parties had no "business relationship," let alone a *continuous* one.[7]

5        Next, this Court relied on the allegations that hotel staff "maintained a relationship with

6    [Plaintiff's] trafficker" and provided him with a service "tailored to his needs." Order 13. But

7    hotel staff could not have maintained a relationship with someone who could not have even been

8    on the premises or in contact with the hotel due to his incarceration. Indeed, Plaintiff provides no

9    evidence that Rich (or Jackson) communicated with anyone at the DoubleTree from prison. Nor

10   could the hotel have provided him with any service, as he was not even a customer or guest. This

11   Court credited the allegation that Plaintiff's trafficker, for example, "frequently paid cash and other

12   anonymous forms of payment." Order 13 (quoting SAC ¶ 92). But despite Plaintiff's testimony

13   that the room was paid for with a prepaid debit card that Rich got from the store, the evidence in

14   fact shows that Plaintiff herself paid for the room. SOMF ¶ 4. And of course, Rich could not have

15   gotten the debit card from the store, as he was in prison. SOMF ¶ 11.

16       Finally, there is no evidence that Hilton rented rooms to those it "knew or should have

17   known were engaged in [*the plaintiff's*] sex trafficking." Order 12 (quoting *J.C.*, 2020 WL

18   6318707, at *7). This Court pointed to the allegation that "hotel staff observed numerous signs of

19   trafficking." *Id.* at 13. But hotel employees could have barely witnessed signs of *prostitution*, let

20   alone commercial sex by force, fraud, or coercion. Because Plaintiff could not have been

21   accompanied by her trafficker at the hotel and she does not claim to have had visible injuries, hotel

22   staff could not have had even constructive knowledge of her trafficking. *See supra* Part II; *infra*

23   Part III.B. And contrary to Plaintiff's "upon information and belief" allegation, there is no record

24   that any staff member submitted any report about Plaintiff or the supposed "red flags of [her]

---

[7] Plaintiff booked the hotel room herself, and she cannot establish that Hilton participated in a venture with *her*. For one, Plaintiff's interactions with hotel staff were minimal. *See supra* Part II; *infra* Part III.B. For another, no court has ever held that a trafficking victim can enter into a "venture" that leads to a co-venturer's § 1595(a) liability. Otherwise, a victim could be civilly liable for her own trafficking. Neither the statute's text nor common sense permits such a reading.

1    trafficking." SAC ¶ 97; Order 12-13 (crediting this allegation). This Court also explained that

2    Hilton should have known of her trafficking because the front-desk manager allegedly became her

3    customer. Order 13-14, 14 n.7. But Plaintiff identified the manager as a man who was fired in

4    2012, long before she claims to have engaged in sex with him. SOMF ¶¶ 13, 14. And regardless,

5    as explained above, the manager's supposed acts and knowledge could not be imputed to Hilton.

6        In sum, the trafficker's absence during the relevant timeframe means that Hilton could not

7    have established a "pattern of conduct" or formed a "tacit agreement" with him. *M.A.*, 425 F. Supp.

8    3d at 970. Thus, Plaintiff cannot show that the parties had a "continuous business relationship,"

9    dooming her Venture 1 theory.

10       **Venture 2.**  Plaintiff's "commercial venture" theory posits that Hilton Defendants operated

11   the DoubleTree, and that venture facilitated her trafficking. Response 15-16. This theory, which

12   this Court did not address its prior Order, is legally flawed. Similar to a RICO enterprise, a TVPRA

13   venture requires "something more" than two entities engaging in otherwise lawful commercial

14   activity. *See Doe 1 v. Apple Inc.*, 96 F.4th 403, 415 (D.C. Cir. 2024); *In re Countrywide Fin. Corp.*,

15   601 F. Supp. 2d 1201, 1214 (S.D. Cal. 2009) (rejecting RICO liability where two affiliates

16   "engaged in  ... a legitimate corporate and financial relationship"). And there is no evidence that

17   Hilton Defendants engaged in anything more than a legitimate corporate and financial relationship

18   with each other in the hospitality business.

19       But the main flaw in Plaintiff's Venture 2 theory is a factual one: there is no evidence that

20   *someone* in this supposed venture—*i.e.*, one of the Hilton Defendants—criminally trafficked her.

21   *See supra* Part II (explaining why perpetrator claim fails). Plaintiff must establish "the existence

22   of a venture that violated Section 1591." *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 553 (7th Cir.

23   2023). Therefore, a venture member must have violated § 1591(a) by trafficking Plaintiff. *Tyla D.*

24   *v. MGM Resorts Int'l*, 2024 WL 4839744, at *4 (D. Nev. Nov. 19, 2024). And as explained in Part

25   II, Plaintiff cannot establish that Hilton Defendants knowingly "harbor[ed]" her or "facilitat[ed]"

26   her trafficking knowing or in reckless disregard that she would be caused to engage in commercial

27   sex through "force," "fraud," or "coercion." 18 U.S.C. § 1591(a).

28

Because no jury could find that Hilton Defendants "participated in a venture" under either venture theory, this Court should enter judgment on Plaintiff's participant claim.

**B.    Hilton Did Not Have Actual or Constructive Knowledge of Plaintiff's Trafficking.**

Plaintiff has produced no evidence that Hilton "knew or should have known" that any venture of which it was supposedly a part "harbor[ed]" Plaintiff to "cause [her] to engage in a commercial sex act" through "force," "fraud," or "coercion." 18 U.S.C. §§ 1591(a), 1595(a); *see Red Roof Inns*, 21 F.4th at 725 (requiring knowledge "as to the plaintiff"); *B.J.*, 2023 WL 3569979, at *3 (same). *See supra* Part II.

*First*, Hilton could not have known that Plaintiff was "harbor[ed]" at the DoubleTree. 18 U.S.C. § 1591(a)(1). According to the only competent evidence in the record, she stayed at the hotel for only one night and could not have been with her traffickers due to their incarceration. And because Dominic Rich was absent, the "baby-sitters" could not have been stationed outside her door during this stay. *See supra* Part II; *cf.* Order 15. Thus, hotel staff would have had no way of knowing that *anyone* was trying to shield Plaintiff from detection.

*Second*, just as the evidence fails to establish Hilton's knowledge or reckless disregard that Plaintiff would be caused to engage in commercial sex through force, fraud, or coercion, it equally fails to establish Hilton's *constructive* knowledge. *See supra* Part II. After all, Plaintiff's testimony about her experience at the hotel (to the extent it is not refuted) is at most "equally consistent with criminal conduct other than sex trafficking, e.g., prostitution." *B.J.*, 2023 WL 3569979, at *6.

In its prior Order, this Court relied heavily on "the signs of her traffickers' control over her" as plausibly establishing constructive knowledge of "coercion." Order 14-16, 16 n.8 (crediting allegations that Plaintiff was constantly guarded or escorted by her trafficker or his associates, that the trafficker would linger in public areas of the hotel while Plaintiff was with johns and force her to "pick up tricks" in view of hotel staff, and that the trafficker would use a "publicly viewable computer" to advertise her). But because the trafficker was in prison during the relevant time, none of this could have happened. SOMF ¶ 11. And Plaintiff has disclaimed allegations like the one that

1    she "pick[ed] up tricks" in front of hotel staff during her November 2013 stay.

2    This Court also pointed to the "heavy foot traffic" and "loud noises and yelling" coming

3    from her room. Order 15. Yet Plaintiff testified that she does not remember how many times she

4    engaged in commercial sex during her one-night stay. SOMF ¶ 6. And she identified at least one

5    occasion when loud noises could have been heard from her room—when Rich assaulted her. SOMF

6    ¶ 10. But again, Rich could not have assaulted her during her November 2013 stay because he was

7    in prison. SOMF ¶ 11.

8    Finally, this Court credited allegations indicating staff involvement with Plaintiff's

9    trafficking. Order 15. But as explained above, Plaintiff's trafficker could not have "maintained a

10   relationship with hotel staff," *id.* (quoting SAC ¶ 94), given his imprisonment. And Plaintiff could

11   not have exchanged sex for free rooms with a manager who was fired more than a year before her

12   stay at the hotel—nor could his knowledge be imputed to Hilton. SOMF ¶ 15.

13   Thus, all Plaintiff is left with is her testimony that she requested extra towels from

14   housekeeping staff, who would have seen condoms in the garbage can, apparently on November

15   29, 2013. SOMF ¶ 7. This is woefully insufficient to prove Hilton's constructive knowledge of

16   *trafficking*. Indeed, relative to other successful participant claims, the evidence here falls well short.

17   Plaintiff does not, for instance, claim that her trafficker "paid [hotel employees] to act as lookouts

18   or informants" or that front desk employees saw her with a "black eye" yet "chose not to intervene

19   despite the likely sex trafficking." *R.T. v. RRI West Mgmt. LLC*, 2025 WL 961531, at *4 (W.D.

20   Wash. Mar. 31, 2025). Or that anyone at the hotel saw her trafficker "grab" or "kick" her or ignore

21   her "plea[s] for help in escaping." *Ricchio v. McLean*, 853 F.3d 553, 555 (1st Cir. 2017). To the

22   contrary: Plaintiff testified that she did not tell anyone at the DoubleTree that she was being

23   trafficked, was in danger, or needed help. SOMF ¶ 16.

24   In response, Plaintiff may claim that the TVPRA requires only *venture-specific*, rather than

25   *plaintiff-specific*, knowledge. But the TVPRA requires the defendant to have knowledge that the

26   venture "engaged in an act in *violation of this chapter*." 18 U.S.C. § 1595(a) (emphasis added).

27   The same provision refers to "a victim of a *violation of this chapter*"—*i.e.*, the plaintiff. *Id.* It

28

1   stands to reason that the defendant must have knowledge of an "act in violation" of which the

2   plaintiff is a victim.  Even the Seventh Circuit, which requires venture-specific knowledge, agrees

3   that in a case like this one, "knowledge of the specific victim goes hand-in-glove with knowledge

4   of the 'venture.'"  *G.G.*, 76 F.4th at 556-57  (citing "hotel sex-trafficking cases").

5       Regardless, whether the TVPRA imposes a plaintiff-specific knowledge requirement is not

6   dispositive in this case, as there is no evidence that Hilton knew or should have known that Plaintiff

7   *or anyone else* was trafficked at the DoubleTree.  Given that there is no evidence of any other

8   victim's  presence at the DoubleTree, Hilton could not have had actual or constructive knowledge

9   of anyone's trafficking.

10      In short, Hilton did not know and should not have known that a venture in which it

11  participated "harbor[ed]" Plaintiff and "force[d]" or "coerce[d]" her (or anyone else) to "engage in

12  a commercial sex act."  18 U.S.C. § 1591(a).  On this ground, too, the Court should enter judgment

13  on Plaintiff's participant claim.

14      **C.    Hilton Did Not Knowingly Benefit from Participating in a Venture that**

15      **Trafficked Her.**

16      In its prior Order, this Court held that "the rental of a room constitutes a financial benefit

17  from a relationship with the trafficker sufficient to meet" the "knowingly benefit" element of

18  § 1595(a) under a "continuous business relationship" theory.  Order 17 (quoting *M.A.*, 425 F. Supp.

19  3d at 965).  And Plaintiff satisfied this element by alleging that Hilton earned revenue from her

20  traffickers' repeated room rentals.  *Id.* (citing SAC ¶ 126).[8]  Merely to describe this element is to

21  defeat its application here.

22      *First*, the only evidence in the record supports room rental revenue on *one night* at the rate

23  of $72.85.  But that does not suffice to show that Hilton "knowingly benefit[ed] ... *from*

24  *participation in a venture*."  18 U.S.C. § 1595(a) (emphasis added).  For all the reasons that there

---

[8] Hilton notes that earning revenue from a trafficker's room rentals does not necessarily qualify as
25  "knowingly benefit[ing] ... *from participation in a venture*."  18 U.S.C. § 1595(a) (emphasis
26  added); *see Red Roof Inns*, 21 F.4th at 724.  The defendant's "knowing benefit" is *explicitly tied* to
    its participation in a venture.  To qualify as a knowing benefit, a hotel's room rental revenue cannot
27  simply result from an "arms-length transaction," *see Apple*, 96 F.4th at 415; instead, it must result
    from a *venture*.  For this reason, too, Plaintiff's theory fails.  *See supra* n.6.
28

1  is no evidence that Hilton participated in a venture with Plaintiff's traffickers, it did not knowingly

2  benefit *from* participation in a venture either. Section III.C.

3      *Second*, and relatedly, Hilton did not rent a room to Plaintiff's traffickers on November 29

4  or 30, 2013, because they were in prison. SOMF ¶ 11. Rather, the evidence shows that Plaintiff

5  rented and paid for the room. SOMF ¶ 4. Hilton's room rental revenue thus bore zero relation to

6  Plaintiff's traffickers, and Hilton did not *knowingly* benefit from any relationship with them.

7      *Third*, even crediting Plaintiff's (impossible) testimony that she exchanged sex for free

8  rooms with the front-desk manager on, around, or after November 29, 2013, it must conclude that

9  Hilton suffered an unknowing *loss*, rather than a knowing benefit. After all, Plaintiff testified that

10  she stayed at the DoubleTree only one or two times without the manager being present—and each

11  time over a "month or two" that she engaged in sex with the manager, she received her own room

12  for free. SOMF ¶¶ 13, 14. Thus, on Plaintiff's telling of the story, Hilton *lost* revenues given that

13  a rogue manager supposedly embezzled away "a month or two" of free rooms. If anything, Plaintiff

14  knowingly and unlawfully benefitted *from Hilton* by receiving free lodging, all while her traffickers

15  were in prison.

16      Plaintiff cannot have it both ways, claiming that Hilton somehow knowingly benefitted on

17  account of room revenue from her on one night, all while losing exponentially more than that as

18  part of the same supposed room-rental venture. Indeed, the idea that Hilton participated in a venture

19  that trafficked Plaintiff because it wanted to knowingly benefit from a $72.85 room rental not only

20  finds no support in the record but it also defies logic.

21      On this independent ground, Hilton is entitled to judgment as a matter of law on Plaintiff's

22  participant claim.

23                          **CONCLUSION**

24      For these reasons, Hilton Defendants respectfully request that the Court grant their Motion

25  for Summary Judgment and dismiss Plaintiff's claims against them with prejudice.

26      Undersigned counsel certifies that this memorandum contains 8,398 words, in compliance

27  with the Local Civil Rules.

28

Dated: May 19, 2025

Respectfully submitted,

/s/ Nicole M. Perry

Nicole M. Perry, *Pro Hac Vice*
JONES DAY
717 Texas Street, Suite 3300
Houston, TX 77002
Telephone: +1.832.239.3939
Email: nmperry@jonesday.com

Bethany K. Biesenthal, *Pro Hac Vice*
Allison L. McQueen, *Pro Hac Vice*
JONES DAY
110 North Wacker Drive, Suite 4800
Chicago, IL 60606
Telephone: +1.312.782.3939
Email: bbiesenthal@jonesday.com
         amcqueen@jonesday.com

Andrew J. Clopton, *Pro Hac Vice*
JONES DAY
150 W. Jefferson, Suite 2100
Detroit, MI 48226
Telephone: +1.313.733.3939
Email: aclopton@jonesday.com

Daniel J. Dunne, Jr. (16999)
Aaron Brecher (47212)
ORRICK HERRINGTON & SUTCLIFFE, LLP
401 Union Street, Suite 3300
Seattle, WA 98101
Telephone: +1.206.839.4300
Email: ddunne@orrick.com
         abrecher@orrick.com

*Attorneys for Defendants Hilton Domestic
Operating Company Inc. and Doubletree
Management LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2025, a copy of the foregoing was filed using the CM/ECF

system, which will effectuate service on all counsel of record.

/s/ Nicole M. Perry

Nicole M. Perry

*Attorney for Defendants Hilton Domestic Operating
Company Inc. and Doubletree Management LLC*

HILTON DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT
Case No. 3:23-CV-06038                    -22-                    JONES DAY
717 Texas Street, Suite 3300
Houston, TX 77002
+1.832.239.3939