UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JANE DOE (S.A.S.), an individual,<br><br>              Plaintiff,<br><br>   v.<br><br>HILTON DOMESTIC OPERATING COMPANY INC. and DOUBLETREE MANAGEMENT, LLC,<br><br>              Defendants. | Case No. 3:23-cv-06038-TMC<br><br>ORDER DENYING PLAINTIFF'S RULE 59 MOTION TO AMEND SUMMARY JUDGMENT ORDER |

## I.    INTRODUCTION

This matter comes before the Court on Plaintiff S.A.S.'s Rule 59 motion to amend the summary judgment order dismissing her case. Dkt. 182. For the reasons stated below, the Court DENIES S.A.S's motion.

## II.    BACKGROUND

On August 11, 2025, this Court granted Defendants' motion for summary judgment. Dkt. 178. The Court entered judgment on the same day. Dkt. 179. The factual and procedural background of this case is extensively recounted in the Court's summary judgment order. Dkt. 178 at 3–11. Thus, in this order, the Court reviews only the facts and procedural history relevant to the instant motion.

ORDER DENYING PLAINTIFF'S RULE 59 MOTION TO AMEND SUMMARY JUDGMENT ORDER - 1

On September 8, 2025, S.A.S. moved the Court to amend its judgment under Federal Rule of Civil Procedure 59(e), arguing the Court should vacate its summary judgment order and judgment and allow the case to proceed to trial. Dkt. 182. Defendants responded on September 23, 2025. Dkt. 183. S.A.S. filed supplemental authority for the Court's consideration—the decision in *M.A. v. Wyndham Hotels &, Resorts, Inc.*, No. 2:19-CV-00849, 2025 WL 2696500 (S.D. Ohio Sept. 22, 2025)—on September 24, 2025. Dkt. 184. Having reviewed the parties' briefing and the relevant record, the Court DENIES S.A.S.'s motion to amend.

### III.    LEGAL STANDARD

Under Rule 59(e), a party may move to have the court amend its judgment within twenty-eight days after entry of judgment. Fed. R. Civ. P. 59(e). Rule 59(e) provides an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (citation modified). In general, there are four grounds upon which a Rule 59(e) motion may be granted:

> (1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law.

*Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) (citing *McDowell v. Calderon*, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999)); *see also Carroll*, 342 F.3d at 945 (a Rule 59(e) motion "should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." (citation omitted)). Finally, a "Rule 59(e) motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Carroll*, 342 F.3d at 945.

## IV.  DISCUSSION

S.A.S. argues that the Court's decision to dismiss her case "rests on manifest errors of law and fact and that, by dismissing a sex-trafficking victim's claims largely due to mistakes in her memory concerning the timeline of her sex trafficking, the judgment is manifestly unjust." Dkt. 182 at 5–6. In doing so, S.A.S. retreads the same evidence and arguments that the Court already addressed in its summary judgment order.

Although "[c]ourts have generally not defined what constitutes 'clear error' under Rule 59(e), case law indicates that clear error should conform to a very exacting standard—*e.g.,* a court should have a clear conviction of error." *Pet Food Exp. Ltd. v. Royal Canin USA, Inc.*, No. C-09-1483 EMC, 2011 WL 6140874, at *4 (N.D. Cal. Dec. 8, 2011) (citation modified); *Teamsters Loc. 617 Pension & Welfare Funds v. Apollo Grp., Inc.*, 282 F.R.D. 216, 231 (D. Ariz. 2012) (same); *Campion v. Old Republic Home Prot. Co.*, No. 09-CV-748-JMA NLS, 2011 WL 1935967, at *1 (S.D. Cal. May 20, 2011) (similar).

First, S.A.S. argues the Court committed errors of fact when it "focus[ed]" on one instance of alleged sex trafficking on November 29–30, 2013, relied on facts indicating S.A.S. was not trafficked at the DoubleTree hotel on those dates, and "ignore[d]" evidence of trafficking at the DoubleTree hotel before those dates. Dkt. 182 at 7–12.

S.A.S. alleged she was trafficked at the DoubleTree hotel from November 29 to November 30, 2013, and that her trafficking "was not limited" to those dates, but that those were the only specific dates she could identify. Dkt. 182 at 7 (quoting Dkt. 53 ¶ 93). In discussing S.A.S.'s deposition testimony, the Court noted several inconsistencies:

> S.A.S.'s deposition testimony about the November 29, 2013 stay was somewhat inconsistent. At one point, S.A.S. testified that she did not have a "specific recollection" of staying at the DoubleTree on November 29, 2013. Dkt. 161-2 at 72–73. She could not recall any interactions with workers that day, nor what room she stayed in. *Id.* at 73–74. At another point, however, S.A.S. testified that while

> she did not specifically remember staying at the DoubleTree on that date, she knew Rich was her trafficker during that visit and that he used the computers at the hotel to advertise her. Dkt. 151-1 at 22. She testified that Rich had used her email address to make the reservation on Hotwire. *Id*. at 24.
>
> S.A.S.'s testimony about the overall timeline of her trafficking at the DoubleTree was also inconsistent. S.A.S. testified that there was a manager at the DoubleTree who traded sex with her for free rooms. Dkt. 161-2 at 83. He told her he was a manager at the hotel and that he wanted to see her and be a regular. Id. at 84. She estimated they engaged in commercial sex at least thirty times, and that Rich was aware of and approved this arrangement. *Id*. at 85–86. She could not remember the year when first asked, but then testified that their interaction began after November 29, 2013. *Id*. S.A.S. testified that she only stayed at the DoubleTree "a couple times without the manager being there," *id*. at 86, and she agreed that November 2013 was "one of the first times" she stayed at the DoubleTree and "everything else happened thereafter," *id*. at 87. She said that the last time she stayed at the DoubleTree was when she refused to have sex with the manager. Dkt. 151-1 at 37.
>
> Later in the deposition, however, S.A.S. estimated that Jackson trafficked her around 2011 and 2012, while Rich was incarcerated. Dkt. 161-2 at 106. And she explained that Jackson would "put [her] at the DoubleTree" during that time. *Id*. at 109. S.A.S. never equivocated on who trafficked her at the DoubleTree, repeatedly clarifying that Rich and Jackson "both were my traffickers at the DoubleTree[.]" See id. at 108.

Dkt. 178 at 8–9. The Court also discussed the following evidence provided by Defendants:

> Defendants met their initial burden by producing evidence that the two men who allegedly trafficked S.A.S. at the DoubleTree were incarcerated in November 2013, the only specific dates alleged; that the DoubleTree's reservation system did not contain records of additional stays; and that the hotel manager identified by S.A.S. as being complicit in her trafficking had been fired by 2012. In addition to the prison records subject to judicial notice, Defendants offered testimony from Jon McFarland, General Manager at the DoubleTree Seattle Airport. Dkt. 152 ¶ 2. McFarland conducted a reservation system review reaching back to January 1, 2013 through August 19, 2016. *Id*. ¶ 4–5. He searched both for S.A.S.'s name, as well as several other names provided in connection with the suit. *Id*. ¶ 5. He also searched for addresses related to the individuals. *Id*. The results showed only the online booking made by S.A.S. for November 29 and 30, 2013. *Id*. ¶ 6. There were no other reservation records for her or her aliases or addresses. *Id*. The same was true for Rich. *Id*. Though there were reservations for the name Robert Jackson, there "is no indication that these reservations are associated with the Robert Jackson identified in" the complaint. *Id*. ¶ 7. The available address information for each of the individuals is different and none "align with any known information for [S.A.S.] or the Robert Jackson in question." *Id*.

ORDER DENYING PLAINTIFF'S RULE 59 MOTION TO AMEND SUMMARY JUDGMENT ORDER - 4

> Additionally, the records show that the Hilton employee/manager identified by S.A.S. in her deposition was fired from the DoubleTree in May 2012. *Id*. ¶ 9. To the best of McFarland's knowledge, "there were no other front desk managers of African descent at the DoubleTree Seattle Airport between 2013 and 2016." *Id*. ¶ 10.

Dkt. 178 at 22 (citing Dkt. 152 ¶¶ 2–9).

S.A.S. identifies no facts which contradict these findings. For example, S.A.S. notes she testified that Rich trafficked her despite being incarcerated. Dkt. 182 at 9 (citing Dkt. 161-2 at 102:13–15). The Court recognized this fact in its order but noted "that S.A.S. unequivocally testified on several occasions that her only traffickers at the DoubleTree were Rich and Jackson," who were both incarcerated in November 2013. Dkt. 178 at 18 (citing Dkt. 161-2 at 42–45, 108–109). Although S.A.S. asserts that Napoleon 'Drop' Matthews could have been the one to traffic her in November 2013, the Court properly rejected this claim when it was raised for the first time during oral argument. Dkt. 178 at 18.

S.A.S. also asserts that "significant evidence raised a fact issue" as to whether she was trafficked at the DoubleTree *before* November 2013. Dkt. 182 at 8–11. S.A.S. proposes, for example, that Jackson could have trafficked her at the DoubleTree between 2010 and 2011. Dkt. 182 at 9.

The Court thoroughly discussed this possibility in its order, but the only evidence S.A.S. offered was (1) deposition testimony "that Jackson trafficked her around 2011 and 2012," and (2) a declaration stating that her trafficking at the DoubleTree "must have included times before November 2013." Dkt. 178 at 9, 17 (first quoting Dkt. 161-2 at 106; then quoting Dkt. 161-1 ¶ 14). The Court found both pieces of evidence contradicted her other deposition statements, including that November 2013 was "one of the first times" she stayed at the DoubleTree. *Id*. at 8, 16 (first quoting Dkt. 161-2 at 87; then citing Dkt. 161-2 at 3–6, 11–13, 15). The Court also found her declaration statements were "little more than conclusions" that did not create a

ORDER DENYING PLAINTIFF'S RULE 59 MOTION TO AMEND SUMMARY JUDGMENT ORDER - 5

material dispute of fact. *Id*. at 16–17. S.A.S. provides no more in the present motion, reiterating her argument that "a jury could have credited her testimony that she was trafficked at the DoubleTree on multiple other occasions." Dkt. 182 at 10. S.A.S. has not shown that the Court clearly erred by concluding otherwise in its summary judgment order.

Second, S.A.S. argues the Court committed errors of law by rejecting theories of beneficiary and perpetrator liability under the Trafficking Victims Protection Reauthorization Act ("TVPRA")—namely because S.A.S. failed to show that Defendants participated in her trafficking. Dkt. 182 at 12–18.

This argument similarly fails. Defendants provided ample evidence showing it was unlikely they knew or should have known of S.A.S.'s trafficking at the DoubleTree hotel. Along with the evidence discussed above, S.A.S. testified she was trafficked at the DoubleTree hotel by two men for a total of 30 to 60 non-consecutive days between 2002 and 2016. Dkt. 178 at 23. "[W]ithout any evidence of S.A.S. being trafficked for even two consecutive nights—or even two nights in close proximity to each other—across fifteen years," the Court determined a reasonable jury could not find Defendants "participated in" her trafficking for beneficiary liability, let alone "knowingly assisted, supported, or facilitated her traffickers" for perpetrator liability. *Id*. at 23–25.

S.A.S. takes issue with the Court's reading of "non-consecutive," reasoning that "[w]hile Plaintiff's stays were non-consecutive in the sense that Plaintiff did not stay for 30-60 days *in a row*, no evidence supported the Court's assumption that all of Plaintiff's stays at the DoubleTree were only for a single night." Dkt. 182 at 16. Adopting this reading does not save S.A.S.'s claims from dismissal, however. S.A.S. neither alleged nor corroborated a stay at the DoubleTree on any specific days other than November 29–30, 2013. S.A.S. also testified she was at the hotel "off and on [. . .] during the time periods that [she] was being trafficked," painting a picture of

ORDER DENYING PLAINTIFF'S RULE 59 MOTION TO AMEND SUMMARY JUDGMENT ORDER - 6

sporadic and irregular stays across fifteen years from which Defendants would not have been aware of S.A.S.'s trafficking. Dkt. 161-2 at 228.

Finally, S.A.S. submitted supplemental authority for the Court's consideration—a recent decision from the Southern District of Ohio when the court denied three hotels' motions for summary judgment in a TVPRA case. Dkt. 184-1; *see Wyndham Hotels* 2025 WL 2696500. The *Wyndham Hotels* court found the defendants knew or should have known about the alleged trafficking given testimony that the surrounding area "was rife with criminal activities," online complaints, trip reviews, staff training on signs of human trafficking, and several facts similar to those alleged here—high foot traffic to the plaintiff's room, "trash cans full of condoms," and frequent requests for towels and sheets. Dkt. 184-1 at 21. Although one hotel was "unable to locate even a single reservation" for the 30 days the plaintiff allegedly stayed there, the court found this fact insufficient to warrant dismissal. *Id*. at 15.

There, however, the plaintiff alleged her traffickers "operated the sex trafficking venture out of the same hotel room for multiple days or weeks in succession" from spring 2014 to August 2015—*i.e.*, at a higher frequency and in a much narrower timeframe than the facts alleged here. *Id*. at 7. This fact, combined with S.A.S.'s inconsistent and conclusory testimony about her stays at the DoubleTree, the lack of evidentiary support for those stays, and the undisputed evidence that her traffickers were incarcerated on the only specific dates alleged, distinguishes the evidentiary record in this case from that of *Wyndham Hotels*.

As discussed in the Court's order, it is undisputed that S.A.S. was a victim of sex trafficking. Dkt. 178 at 2. The Court is sympathetic to S.A.S. and acknowledges that trauma has impeded her ability to recall the full timeline of what she endured. Accordingly, the Court analyzed each of S.A.S.'s claims and each alleged factual dispute in detail. But for the reasons discussed above, the Court is not persuaded it made a "manifest error[] of law or fact"

ORDER DENYING PLAINTIFF'S RULE 59 MOTION TO AMEND SUMMARY JUDGMENT ORDER - 7

warranting the "extraordinary remedy" of amending the Court's summary judgment order. *Allstate*, 634 F.3d at 1111. S.A.S.'s motion is DENIED.

## V.    CONCLUSION

For the foregoing reasons, the Court DENIES S.A.S.'s motion to amend or alter judgment under Rule 59.

Dated this 14th day of November, 2025.

Tiffany M. Cartwright
United States District Judge